J-S45006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARLOS MEDINA | : | |
| | : | |
| Appellant | : | No. 725 MDA 2024 |

Appeal from the Judgment of Sentence Entered May 3, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0002213-2022

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                **FILED: DECEMBER 30, 2024**

Appellant, Carlos Medina, appeals from the judgment of sentence entered May 3, 2024.  We affirm.

The trial court summarized the relevant facts revealed during the January 23, 2023 suppression hearing as follows.

> Jared Fluck is a trooper employed by the Pennsylvania State Police.  At present, Trooper Fluck is assigned to the Bureau of Criminal Investigation, Drug Law Enforcement Division, Central Interdiction Unit.  He is also cross-designated as a task force officer with the Homeland Security Investigation Division.  Through such designation, Trooper Fluck is involved in extended border searches designed at interrupting larger narcotics trafficking organizations.
>
> On March 9, 2022, Trooper Fluck was notified by Special Agent Robert Mayer of Homeland Security Investigations that United States Customs and Border Protection had intercepted a package addressed to Osnei Cynco at 633 Springton Way, Lancaster, Pennsylvania.  This package, which had been intercepted at an international airport in Puerto Rico, was shipped by Lucie Hodge from a residence located in Saint Thomas, U.S. Virgin Islands.  Trooper Fluck was advised that

officials with the United States Customs and Border Protection located a kilogram of cocaine secreted in the package. Trooper Fluck determined the identities of the sender and recipient to be fictitious. [Appellant] was the mail delivery person for the recipient address. Trooper Fluck received custody of the suspected package and contraband on March 10, 2022, which had been forwarded to him by the federal authorities. Trooper Fluck did not secure a search warrant prior to opening the package upon his receipt.

On March 10, 2022, Trooper Fluck was advised that United States Customs and Border Protection had intercepted a second parcel going to the same neighborhood from the same area of the Virgin Islands. This parcel, which was also intercepted at an international airport in Puerto Rico was addressed to Edwin Joseph at 186 J Speedwell Road, Lancaster, Pennsylvania. The parcel was shipped by Joel King Bovoni from Saint Thomas, Virgin Islands. Again, both the shipper and recipient appeared to be fictious, and [Appellant] was the mail delivery person for the recipient address. Trooper Fluck took custody of this suspected package and contraband on March 11, 2022, which had been forwarded to him by the federal authorities. Trooper Fluck did not secure a search warrant prior to opening the package upon his receipt.

In response thereto, Trooper Fluck arranged a controlled delivery of one of the parcels[, using the original package and shipping labels. The suspected cocaine was replaced with a counterfeit substance. The trooper then placed the parcel in the normal mail stream with the assistance of officials of the United States Postal Service. This surveillance occurred on March 17, 2022. On this date, [Appellant] took possession of the parcel and . . . scanned the package as if it had been delivered but drove past the delivery address. Approximately two hours later, [Appellant] exchanged the package to other individuals in return for payment. Subsequent thereto, [Appellant was arrested and] admitted his knowledge and culpability in this matter.

Trial Court Opinion, 8/21/23, at 2-3.

On September 26, 2022, Appellant filed an omnibus pre-trial motion. In his motion, Appellant challenged the search conducted by Trooper Fluck on

March 11, 2022,[1] arguing that it violated Appellant's constitutional rights because Trooper Fluck opened the parcel without a warrant. Appellant claimed that, because the March 11, 2022 search was unconstitutional, his subsequent arrest was unlawful and any "incriminating statements made by [Appellant] pursuant to [the] post-arrest interrogation" were subject to suppression. Appellant's Omnibus Pre-Trial Motion, 9/26/22, at 5. The trial court convened a hearing on Appellant's motion on January 23, 2023, during which Trooper Fluck testified. Thereafter, on August 21, 2023, the trial court issued an order denying suppression. The matter proceeded to a non-jury trial on February 29, 2024. At the conclusion of trial, Appellant was convicted of possession with intent to deliver ("PWID"), criminal use of a communication facility, and conspiracy to commit PWID.[2] This timely appeal followed.

Appellant raises the following issue for our consideration.

> Did the trial court commit an error of law and improperly dismiss [Appellant's] omnibus pre-trial motion . . . because the warrantless search was unlawful and all evidence produced, including [Appellant's] subsequent statements, should have been suppressed?

Appellant's Brief at 4.

On appeal, Appellant challenges the trial court's suppression ruling. Appellant argues, *inter alia*, that the trial court erred in denying suppression

---

[1] At the suppression hearing, Appellant's counsel stated that his challenge was confined to the search conducted on March 11, 2022. **See** N.T. Suppression Hearing, 1/23/23, at 3.

[2] 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. §§ 7512(a), 903(a)(1), respectively.

because Trooper Fluck failed to obtain a warrant before reviewing the contents of "an already opened and searched parcel" sent to him "from an outside law enforcement agency, namely, Special Agent Robert Mayer of Homeland Security Investigations." Appellant's Brief at 12. In so doing, Appellant claims that Trooper Fluck violated his constitutional rights and, as such, the trial court erred in denying suppression.

Our standard of review for an order denying a motion to suppress is well established.

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019), *quoting Commonwealth v. Kemp*, 195 A.3d 269, 275 (Pa. Super. 2018).

Importantly, "[a] defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." *Commonwealth v. Burton*, 973 A.2d 428, 435 (Pa. Super. 2009). "[A] defendant accused of a possessory crime who seeks to challenge a search

and seizure . . . has automatic standing . . . to maintain that challenge."

***Commonwealth v. Sell,*** 470 A.2d 457, 468 (Pa. 1983) (internal quotation

marks omitted). Even if standing is established, however, to prevail on a

motion to suppress, "a defendant is required to separately demonstrate a

personal privacy interest in the area searched or effects seized, and that such

interest was 'actual, societally sanctioned as reasonable, and justifiable.'"

***Commonwealth v. Black***, 758 A.2d 1253, 1257 (Pa. Super. 2000) (quotation

omitted). Indeed, our Supreme Court previously addressed this requirement,

explaining that:

> An individual whose constitutionally protected rights are not violated cannot claim any injury by a warrantless police seizure. In order to claim a constitutionally protected right in an item seized, the defendant must show: (1) that he had a subjective expectation of privacy; and (2) that the expectation is one that society is prepared to recognize as reasonable and legitimate. ***See Commonwealth v. Gordon***, 683 A.2d 253, 256 (Pa. 1996). We consider the totality of the circumstances and carefully weigh the societal interests involved when determining the legitimacy of such an expectation. ***Id.*** at 257.

***Commonwealth v. Johnson***, 727 A.2d 1089, 1098 (Pa. 1999) (footnote and

parallel citations omitted).

Herein, Appellant was charged with, *inter alia*, PWID and, as such, had

standing to raise suppression. The evidence presented at the suppression

hearing, however, revealed that the searched parcels "did not belong to

[Appellant], [were] not sent by [Appellant] and [were] not addressed to

[Appellant]." Trial Court Opinion, 8/21/23, at 7. In accordance with the case

law promulgated by this Court, Appellant therefore cannot "establish the

- 5 -

existence of a reasonable and legitimate expectation of privacy in the item[s] seized." *Black*, 758 A.2d at 1258 (holding that because the searched package was "addressed to Barbara Barsh" and neither appealing party "alleged that they were Barbara Barsh or that Barbara Barsh was an alias used by either of them" and, instead, "attempted to disassociate themselves from the package" they "each failed to demonstrate how their respective privacy interests had been violated under either the Fourth Amendment of the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution"). We therefore affirm the trial court's order denying suppression.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/30/2024